THE RICHMOND AND DANVILLE RAILROAD CO. *v.* WRIGHT.

This case turned on the credibility of the witnesses, and there was no abuse of discretion by the court below in not granting a new trial.                                   *Judgment affirmed.*

October 19, 1891.

Railroads. Negligence. Evidence. Before Judge VAN EPPS. City court of Atlanta. March term, 1891.

The suit was for an injury to the plaintiff's hand by crushing it between cars while he was preparing to couple them in the line of his duty. He obtained a verdict for $475, and the defendant's motion for a new trial on the general grounds was overruled. The testimony of the plaintiff and another witness tended to show the following:

At night he was instructed by the conductor to couple an engine and cab to a stationary cab. He signalled to the engine to slack up, and then signalled it to stop; it did not stop but struck the cab and knocked it a few feet. He then signalled the fireman on the engine to stand still, and told him to stand still and let him go in

and make the coupling. He went in (the engine then being still), carrying a link and lamp in one hand and a stick in the other, intending to couple with the stick, which he used all the time. He laid the lamp on the end of the stationary cab and tried to get the pin out, but it was tight; he could not shake it loose nor get it out with the stick. He stooped and commenced to drive the tight link with the link he held. The engine moved quickly and without any signal; the plaintiff heard it exhaust, started to run out, stumbled and threw up his hand on the dead block to catch; and just as he did so it was crushed. No slack caught it; nor did he tell the conductor he was hurt by the slack rolling out while he was pushing the pin. He could not get the pin out with the stick. He did not know whether it was against the rules to go between the cars; supposed it was a rule that couplings were to be made with sticks. No rules were read to him, and he could not read them himself. He did not know whether or not he made his mark to the agreement or rule hereafter mentioned. The conductor asked him, the next day after hiring him, if he had ever signed the coupling list, and he replied no; and the conductor said, "Well, sign this here and we will go home; it aint no count nohow." The conductor did not read it, and plaintiff did not hear it read or explained; he signed something, did not know what. If it was a rule to use a stick, he did not know it.

The defendant introduced an agreement or rule signed by the plaintiff eighteen days before the injury, to the effect that he. fully understood that defendant's rules positively prohibited brakemen from coupling or un-coupling except with a stick, and that brakemen or others must not go between cars under any circumstances, for the purpose of coupling or uncoupling or for adjusting pins, etc., when an engine was attached to

such cars; and in consideration of being employed by the defendant he agreed to be bound by said rule, and waived all or any liability of the defendant to him for any results of disobedience or infraction thereof; and that he had read the above carefully and fully understood it. Following was a statement signed by the conductor, that he read the agreement over to the plaintiff and carefully explained it, and that the plaintiff signed it by his mark. The testimony of the conductor and the engineer (the fireman being dead) tended to show as follows: The only signal given was to come ahead and couple; it was a car-length signal; and that was all that was done until the plaintiff was brought out with his hand mashed. It was mashed the first time they approached the cab; the engine did not approach it when the coupling was made but the one time; it approached at a reasonable speed for coupling. Plaintiff told the conductor he entered the link and went to push the pin down, and the slack rolled out ahead of the pin and caught his hand. He did sign the agreement above mentioned, and the conductor witnessed his signature. He asked plaintiff, on hiring him, if he knew the rules of the road, and he said he did. The conductor told him there was a coupling form he must sign. Without that he was not allowed to work. He said he could not read or write, and for the conductor to fill out the paper. The conductor did so, and read it all over to him, and he touched the pen to the mark, and used the stick afterwards.

JACKSON & JACKSON, for plaintiff in error.
BIGBY & BERRY and JOHN C. REED, *contra*.